## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SABAHUDIN TAHIC,** | : | **Civil No. 3:11-CV-478** |
| | : | |
| **Petitioner,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ERIC HOLDER, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This case involves a habeas corpus petition filed by Sabahudin Tahic, a Bosnian national, and convicted burglar. Tahic currently awaits deportation from the United States following his conviction on state criminal charges. Tahic came into immigration custody for removal from the United States in September 2010. He presently remains in immigration custody, but now has travel documents and is scheduled to be repatriated to his homeland within a month.

Despite what is represented to be his imminent departure, Tahic is dissatisfied with his continued detention pending removal, and has filed this petition for writ of habeas corpus seeking release from immigration custody. While Tahic's current post-removal order detention now slightly exceeds the presumptively reasonable  6-month

period prescribed by the United States Supreme in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), we believe–at present–that this continued detention is justified, given the likely prospect that immigration officials will be able to effect his removal in the foreseeable future. Accordingly, it is recommended that this petition be denied without prejudice.

## II.    <u>Statement of Facts and of The Case</u>

The Petitioner, Sabahudin Tahic, is a citizen of Bosnia-Herzegovina, who entered the United States on August 20, 1998, as a refugee. (Doc. 6,  Ex. A, Record of Deportable/Inadmissible Alien.) On March 21, 2005, Tahic's immigration status was adjusted to that of a Lawful Permanent Resident effective August 20, 1998. (<u>Id</u>., Ex. B, Notice to Appear.) Ten years later, in 2008, Tahic became embroiled in the criminal justice system, as a result of his involvement in several burglaries. Specifically, on October 9, 2008, Petitioner was convicted in the Court of Common Pleas of Erie County on two separate counts of criminal conspiracy - engaging in burglary and was sentenced to six to thirty months imprisonment. (<u>Id</u>.)

While Tahic was in state custody serving this sentence, immigration officials commenced removal proceedings against him. Those proceedings began on February 12, 2009, when Tahic received the Notice to Appear, which cited him for conduct which allegedly justified his removal from the United States. (<u>Id</u>.) Specifically, the Notice to Appear indicated that Tahic was subject to removal because: 1) he had been

convicted of an aggravated felony for violating a law relating to theft and a law relating to an attempt or conspiracy to commit a theft; and 2) after admission he had twice been convicted of crimes involving moral turpitude. (Doc. 6, Ex. B, Notice to Appear.) On December 16, 2009, while Tahic was still serving his state sentence, removal proceedings were conducted and Tahic was ordered removed to Bosnia. (Doc. 6, Ex. C, Order of Immigration Judge.) Tahic waived his right to appeal this decision, rendering his order of removal administratively final as of December 16, 2009. (Id.)

While Tahic was subject to a final order of removal in December 2009, he was not in immigration custody. Instead, he remained a state prisoner because the state parole board approved Tahic for conditional release, subject to the condition that Tahic have an approved home plan. (Doc., 6, Ex. G, PA Parole Board Documentation, p. 1.) Tahic did not secure an approved home plan until August 24, 2010. (Id. p. 2.) Once Tahic met these conditions of his state parole release, he was processed by the state and paroled to the immigration detainer that had been lodged against him as a result of these removal proceedings. Tahic was then brought into immigration custody on September 28, 2010, and has remained in immigration custody since that time.

Once Tahic was remanded to immigration custody, immigration officials acted with dispatch to arrange his repatriation to his homeland. Thus, on October 5, 2010, travel documents were requested from Bosnia. (Doc. 6, Ex. C, Letter to Embassy of Bosnia and Herzegovina.) On March 22, 2011, Tahic was notified that a travel

document had been obtained and his removal would take place in April, 2011.(Doc. 6, Ex. F, Notice Pursuant to 8 C.F.R. §241.4(g)(4).) The Respondents now confirm that travel arrangements have been made for Tahic during the month of April, 2011.

At the same time that the government arranged for Tahic's removal, it also took steps to assess whether his continued detention was warranted. Thus, on January 13, 2011, immigration officials conducted a custody review for Tahic, and concluded that his continued brief detention was justified since travel documents would be issued for him in the reasonably foreseeable future. (Doc. 6, Ex. E, Decision to Continue Detention.)

Dissatisfied with this immigration detention determination, on March 15, 2011, Tahic filed the instant habeas petition. (Doc. 1.) In this petition, Tahic advanced a single, narrow claim, focusing upon the delay following the entry of an administratively final order of removal in this matter. Citing this delay, Tahic insists that his current period of detention pending removal is presumptively unreasonable, and seeks an order directing immigration officials to release him on bail pending deportation. (Id.) The United States has responded to this petition (Doc. 6), and the expedited time for filing a traverse has now passed. Therefore, this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that the petition be denied because, at present, Tahic's continued detention is justified, given his prior criminal

record, and the likely prospect that immigration officials will be able to effect his removal in the foreseeable future.

### III.   <u>Discussion</u>

### A.   <u>Tahic's Current Post Removal Detention Remains Reasonably Related to His Foreseeable Removal and Does Not Offend Due Process</u>

As an alien under an administratively final order of removal, Sabahudin Tahic's current post-removal detention is governed by a series of statutory and constitutional rules.  Once the Immigration Judge entered an administratively final order of removal against him, and Tahic came into immigration custody in September of 2010, the law prescribed a series of rules governing his continued detention. First, aliens subject to final removal orders, like Tahic, must initially be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). As part of the removal process that statute also specifically commands that "[d]uring the removal period the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Thus, federal law generally mandates an initial 90-day period of detention for aliens, like Tahic, who are awaiting removal from this country. In Tahic's case, this statutory 90-day "removal period" during which detention is mandatory began when he was remanded into immigration custody by state authorities in September of 2010.

Tahic's post-removal detention has now exceeded this mandatory 90-day detention period, and currently just exceeds six-months in duration. Having exceeded the mandatory statutory post-removal detention period, Tahic's continuing immigration detention pending removal implicates a series of other legal and constitutional considerations. For aliens awaiting removal, like Tahic, the contours of those constitutional considerations are described by the United States Supreme Court's decision in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), and its progeny.

In <u>Zadvydas</u>, the United States Supreme Court recognized due process concerns which apply to aliens who are indefinitely detained while awaiting removal from the United States. While the Court in <u>Zadvydas</u> sustained the validity of the initial mandatory detention of such aliens during the 90-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A), in order to avoid constitutional concerns, the Court concluded that for terms of detention beyond this initial 90-day period: "we think it practically necessary to recognize some presumptively reasonable period of detention." <u>Id</u>. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform

administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period. Further detention beyond this 90-day period will then be presumed reasonable up to a period of six months, at which time, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either respond with evidence sufficient to rebut that showing or give the alien bail consideration.

Cases construing Zadvydas recognize, however, that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention. It is not an ironclad time frame within

which aliens must be removed, or released. Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal. In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005). In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that

8

there is no significant likelihood of removal in the reasonably foreseeable future."

Zadvydas, 533 U.S. at 701.  Applying these standards, periods of detention far greater

than the six months currently experienced by Tahic have repeatedly been sustained

where the alien has failed to show there is no significant likelihood of removal in the

reasonably foreseeable future.  See, e.g., Joseph v. United States, 127 F. App'x 79 (3d

Cir. 2005) (11 months); Sun v. Holder, No. 10-2186, 2010 WL 5391279 (M.D. Pa.

Dec. 22, 2010)(10 months);  Joseph  v. Lowe, No. 10-1222, 2010 WL 3835872 (M.D.

Pa. Sept. 24, 2010) (10 months); Boyce v. Holder, 09-2254, 2010 WL 817482 (M.D.

Pa. March 9, 2010)(18 months); Robinson v. District Director, No. 09-637, 2009 WL

3366439 (M.D. Pa. Oct. 19, 2009) (1 year); Brown v. Attorney General, No. 09-313,

2009 WL 2225431 (M.D. Pa. July 23, 2009) (10 months); Aishrat v. Mukasey, No. 08-

786, 2008 WL 3071003 (M.D. Pa. Aug. 1, 2008) (10 months); Cyril v. Bureau of

Immigration and Customs Enforcement, No. 05-2658, 2006 WL 1313857 (M.D. Pa.

May 11, 2006) (10 months); Nma v. Ridge, 286 F.Supp.2d 469 (E.D.Pa. 2003)(11

months).

Judged against these standards, it is clear that, while Tahic's current detention,

which slightly exceeds six months,  is of sufficient duration to trigger scrutiny by this

Court, his claim that he has been subjected to an unconstitutionally excessive and

prolonged detention fails on its merits since Tahic has not "provide[d] evidence of a

good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. Quite the contrary, the government's response to this petition shows that immigration officials have secured travel documents for Tahic and have scheduled his removal in April 2011. On these facts–where Tahic's removal is reported as imminent–Tahic cannot demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. Furthermore, while seeking Tahic's removal, immigration officials also conducted a post-removal custody review for him, which concluded that his continued detention was appropriate given his criminal past, and the prospect of his removal from the United States in the foreseeable future. This agency determination is fully warranted in light of Tahic's criminal history and justified his continued, brief detention pending removal.

While we find that Tahic has not carried his burden of proof under Zadvydas, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink". Zadvydas, 533 U.S. at 701.  In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably

foreseeable future' conversely would have to shrink." <u>Zadvydas</u>, 533 U.S. at 701, 121 S.Ct. at 2505. Thus, if time passes with no progress on removal, [the petitioner] may file a new 2241 petition challenging his continued detention. We believe it would not be unreasonable for him to file another petition after four more months. Alternatively, he may file sooner if specific events occur indicating he would not be removed in the reasonably foreseeable future. We add, however, that we express no opinion on whether such a motion would succeed in either circumstance.

<u>Aishrat v. Mukasey</u>, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008).

Accordingly, immigration officials must remain alert to their legal responsibility to ensure Tahic's prompt removal from the United States, and strive to expedite his return to his homeland. While we urge Respondents to keep these requirements of the law in mind, at present, we find that Tahic has not carried his burden of proving that he will not be removed in the foreseeable future, and that his continued detention has become unreasonable in its duration. Therefore, this petition should be denied without prejudice.

### IV.  **Recommendation**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus,  IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, as the delay and detention become unreasonable and excessive .The Parties are further placed on notice that pursuant to Local Rule 72.3:

11

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of April, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge